*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENGAGE HEALTHCARE COMMUNICATIONS, LLC; GREEN HILL HEALTHCARE COMMUNICATIONS, LLC; and CENTER OF EXCELLENCE MEDIA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INTELLISPHERE, LLC, MICHAEL J. HENNESSY & ASSOCIATES, INC., ARC MESA EDUCATORS, LLC, MICHAEL J. HENNESSY, JOHN DOES 1 TO 5; JANE DOES 1 TO 5, <br><br> Defendants. | Civil Action No. 12-787 (FLW) (LHG) <br><br> <u>**OPINION**</u> |

**<u>WOLFSON, United States District Judge</u>:**

Pending before the Court is a motion by Defendants Intellisphere, LLC, Michael J. Hennessy & Associates, Inc., Arc Mesa Educators, LLC, and Michael J. Hennessy, individually (collectively, "Defendants") for an order declaring this case exceptional under 15 U.S.C. § 1117(a) such that, for a defined period of time, reasonable attorneys' fees and costs be awarded. Defendants seek costs and fees after prevailing on their summary judgment motion against Plaintiffs Engage Healthcare Communications, LLC, Green Hill Healthcare Communications, LLC, and Center of Excellence Media, LLC (collectively, "Plaintiffs"). The First Amended

1

Complaint ("FAC") alleged that Defendants infringed on 16 of Plaintiffs' trademarks. For the reasons that follow, Defendants' motion is denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The present matter, a long-running and contentious dispute between two medical publishing companies controlled by competing members of the same family, stems from Defendants' purported infringement of 16 trademarks that Plaintiffs use as titles for medical-related magazines, seminars, and continuing education courses. Summ. J. Op. at 3, November 29, 2018, ECF No. 300.[1]

The dispute began on December 7, 2011, when Plaintiffs, through their counsel, sent a cease-and-desist letter to Intellisphere and MJH & Associates regarding several of Defendants' marks. *Id.* at 11. In response, Intellisphere filed a cancellation proceeding before the Trademark Trial and Appeal Board of the Patent and Trademark Office ("PTO"), seeking the cancellation of Plaintiffs' registration for the mark VALUE-BASED CANCER CARE. *Id*. On February 9, 2012, Plaintiffs filed a Complaint against Defendants, alleging, *inter alia*, trademark infringement and unfair competition, and amended their complaint shortly thereafter. ECF No. 1, 10. The FAC asserted the following causes of action: (1) trademark infringement under 15 U.S.C. § 1125(a); (2) trademark infringement – unfair competition under 15 U.S.C. § 1125(a); (3) false designation of origin under 15 U.S.C. § 1125(a); (4) declaratory judgment under 28 U.S.C. §2201, *et seq*; (5) an unfair competition claim under N.J.S.A. 56:4-1l; (6) a New Jersey common law unfair competition claim; 7) false advertising under 15 U.S.C. § 1125; and (8) tortious interference with

---

[1] A more complete factual background is included in the Court's summary judgment Opinion.

prospective contractual relationships. On April 20, 2012, Defendants filed their first Counterclaim and Third-Party Complaint, asserting the same causes of action that were asserted in the FAC. ECF No. 12.

The case proceeded through discovery, but the parties reportedly reached a settlement on December 3, 2013, and the Court administratively terminated the matter. ECF No. 69. However, there was a dispute over the scope of the settlement terms, and for almost all of 2014, this matter was the subject of a number of failed mediation attempts. On March 15, 2015, the case was reopened and assigned to this Court. ECF No. 118. Various motions to dismiss and motions to enforce the settlement were filed shortly thereafter, including a June 19, 2015 motion by Defendants to dismiss Counts One through Four of the FAC for failure to state a cause of action. ECF No. 135. On November 24, 2015, Defendants filed another motion to amend their counterclaims to assert prior usage and superiority of their trademarks. ECF No. 154.

In December 2015, Defendants changed counsel to their present counsel, Day Pitney. In a letter withdrawing their motion to amend, Defendants' counsel wrote:

> [W]e have evaluated the pleadings in this matter, including the pending Motions. We believe the pending Motion to Amend is deficient and cannot proceed as currently filed. By withdrawing the Motion, we will seek to correct these deficiencies and refile the Motion a later date, which will streamline several issues related to the claims and parties in this case.

ECF No. 164 at 1. Defendants' counsel also informed the Court that Defendant would not be filing a motion to dismiss, which had been discussed at a previous Court conference *Id.* Instead, in May 2016, Defendants filed a Second Amended Answer and Counterclaim, reducing the claims asserted from eleven to three and withdrawing the pending Third-Party Complaint. ECF

No. 195. According to Defendants, the purpose of this "streamlining" was to "focus[ ] the attention on a threshold and dispositive issue: secondary meaning." ECF No. 173-1 at 5.

On August 11, 2016, the Magistrate Judge appointed a Special Master to handle discovery disputes. ECF No. 205. Discovery was indeed contentious, and, over the course of the case, the Special Master issued, by this Court's count, eighteen orders and eight reports and recommendations. These disputes included:

- Plaintiffs' motion to enforce a subpoena served on Shannon Hennessy Pulaski, co-counsel of record for Defendants and the daughter of Michael J. Hennessy, which the Magistrate Judge rejected. Hr'g Tr. 26:13-27:7, May 12, 2016, ECF No. 199.

- What Defendants contend were "large document dumps" involving 210 Gigabytes of ESI consisting of approximately 200,000 documents. *Id.* at 29:17-31:7.

- Disputes about Plaintiffs' interrogatory responses, which Defendants contend Plaintiffs unreasonably delayed and, once provided, consisted of boilerplate explanations of why their marks were arbitrary or suggestive. Declaration of Michael L. Fialkoff, dated January 4, 2018 ("Fialkoff Decl."), Ex. B (Plaintiffs' Interrogatory Responses) at 10.

- Plaintiffs' failure to produce a Rule 30(b)(6) corporate representative who could testify on the issue of when the marks had attained secondary meaning. Summ. J. Op. at 26.

- Defendants' rejection of ESI protocols and search terms that had been agreed to by counsel over the course of two years, and Defendants' purported admission, in the fall of 2017, that they had not yet produced nearly 45,000 emails. Special Master Order # 1, ¶ 10, ECF No. 207.

- Plaintiffs' motion for sanctions due to Defendants' breach of the Discovery Confidentiality Agreement ("DCO"), which the Magistrate Judge granted in part and denied in part, finding the breach to be "inadvertent," but, nonetheless awarding Plaintiffs costs and fees. Order at 24, Jan. 23, 2019, ECF No. 316.

On January 17, 2018, the Court set a final schedule for summary judgment briefing. Both parties moved for summary judgment; Defendants sought dismissal of all claims in the FAC and Plaintiffs sought a declaratory judgment dismissing and/or cancelling Defendants' pending trademark applications and existing registered trademarks. *See* ECF Nos. 278, 279. On November 29, 2018, this Court issued an Opinion and Order granting, in full, Defendants' motion, and denying, in full, Plaintiffs' motion, and, therefore, dismissing all of Plaintiffs' claims. In the Opinion, the Court found that 15 of the 16 at-issue marks held by Plaintiff were not protectable trademarks, being "descriptive" but lacking "secondary meaning." Summ. J. Op. at 14-28. On the secondary meaning issue, specifically, the Court held that Plaintiffs had failed to carry their burden of proof, as their designated corporate representative could not testify as to the date on which the marks acquired secondary meaning, despite being ordered to do so by both the Special Master and the Magistrate Judge. *Id.* at 25-28. For the one mark that was potentially protectable—PEER-SPECTIVES—the Court found that Plaintiffs could not assert a trademark infringement claim because it was not likely to cause confusion with Defendants' mark. *Id.* at 29-32. In denying Plaintiffs' summary judgment motion, the Court held that Plaintiffs could not permissibly seek cancellation of marks through a declaratory judgment action without first prevailing on an independent trademark infringement claim. *Id.* at 35-36. The instant motion ensued, in which Defendants seek fees for the period after Day Pitney became counsel.

## II. LEGAL STANDARD

Section 35(a) of the Lanham Act provides that "in exceptional cases [courts] may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); *Securacomm Consulting, Inc. v. Securacom Inc.,* 224 F.3d 273, 280 (3d Cir. 2000) (highlighting that "the language of § 35(a) authorizing attorney's fees to the prevailing party in the discretion of the court [applies to] defendants as well as plaintiffs."). In general, a party prevails when it obtains a final judgment on the merits, which includes a summary judgment decision of non-infringement. *Renna v. Cty. of Union, N.J.*, No. 11-3328, 2015 WL 93800, at *6 (D.N.J. Jan. 7, 2015), *report and recommendation adopted*, 2015 WL 1815498 (D.N.J. Apr. 21, 2015) (citing *Recouvreur v. Carreon,* 940 F.Supp.2d 1063, 1067 (N.D.Cal.2013)). As there is no dispute that Defendants are a "prevailing party," the Court must determine whether this case is "exceptional."

Traditionally, the Federal Circuit took the position that "a case is 'exceptional' only if a district court either finds litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both 'brought in subjective bad faith' and 'objectively baseless.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014) (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005)). However, in *Octane Fitness*, the Supreme Court rejected this standard, embracing a definition of "exceptional" far broader than the one articulated by the Federal Circuit in *Brooks.* In *Octane Fitness,* the Supreme Court held "an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

In *Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 314–17 (3d Cir. 2014), the Third Circuit revisited the governing standard for determining "exceptional" cases following the *Octane Fitness* decision. The Third Circuit explained that after *Octane Fitness,* cases are now "exceptional" under the Lanham Act "when (a) there is an unusual discrepancy in the merits of the positions taken by the parties [,] or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Id.* at 315.

Essentially, a court's discretion to award fees "is not cabined by a threshold requirement that the losing party acted culpably." *Id.* Although blameworthiness might be a factor, *Octane Fitness* "has eliminated the first step in [the Third Circuit's] two-step test for awarding fees under § 35(a) of the Lanham Act." *Id.* Whether a party's litigation conduct is "exceptional enough to merit attorneys' fees must be determined by district courts in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (internal citations and quotations omitted). Courts, moreover, may consider a list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness,* 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy,* 510 U.S. 517, 534 n. 19 (1994)). *Octane Fitness* requires a party to prove an "exceptional case" by a preponderance of the evidence. *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 485 (4th Cir. 2018).

### III. DISCUSSION

Applying the test enumerated by the Third Circuit in *Fair Wind,* Defendants make two arguments as two why this case is exceptional. First, they argue that there is a vast discrepancy in the merits of the parties' positions due to the "sheer number of meritless positions taken by

7

Plaintiffs." ECF No. 312-1 at 17. Second, they contend that Plaintiffs have litigated the case in a unreasonable manner, especially since December 2015, when Defendants' new counsel took over the case.

   A.  **Discrepancy in the Merits of the Positions Taken by the Parties**

At the summary judgment stage, the Court dismissed Plaintiffs' trademark infringement claims because all but one of Plaintiffs' marks were not protectable trademarks. The Court, therefore, now looks to whether, under the *Octane* and *Fair Wind* standards, there was so great of a discrepancy between the parties' litigating positions regarding protectability.

To determine whether there is an unusual discrepancy in the merits of the parties' positions, *Octane* and *Fair Wind* direct "district courts in the case-by-case exercise of their discretion" to consider "the totality of the circumstances." *Octane Fitness,* 572 U.S. at 554. Here, examining the "totality of the circumstances" surrounding this unique case—a protracted, contentious family dispute—suggests that the gap in the parties' litigating positions was not nearly as great as Defendants contend. The case began on February 9, 2012, when Plaintiffs filed a Complaint against Defendants, alleging, *inter alia*, trademark infringement and unfair competition, asserting that Defendants' marks, including, for example, "VALUE-BASED ONCOLOGY, and PERSONALIZED CANCER CARE, infringed on Plaintiffs' marks. As protectability is an element of trademark infringement, Plaintiffs necessarily asserted that their own marks were protectable, a position that Defendants did not dispute for much of the litigation. Moreover, on April 20, 2012, Defendants filed a counterclaim and Third-Party Complaint that essentially mirrored Plaintiffs' Complaint. As with Plaintiffs' claims, inherent in these counterclaims was the assertion by Defendants that their allegedly infringing marks, which

included similar or identical titles to Plaintiffs' marks such as VALUE-BASED ONCOLOGY and PERSONALIZED MEDICINE IN HEMATOLOGY/ONCOLOGY, were similarly protectable under the Lanham Act.[2] After three years of motion practice, a failed settlement, mediation, and a drawn-out and antagonistic discovery process, Defendants switched counsel in late 2015 and abruptly voluntarily dismissed their counterclaims and, in May of 2016, after nearly four years of litigation, filed amended counterclaims asserting that Plaintiffs' marks were not protectable. Although the Court ultimately agreed with Defendants, the fact that both parties argued that their extremely similar marks were protectable for most of the litigation, weighs against finding that there was a large discrepancy in the merits of the parties' litigating positions.[3]

Moreover, the Court's analysis of the protectability issue at the summary judgment stage was not as cut-and-dry as Defendants contend, which tends to indicate that Plaintiffs' claims were neither "frivolous" nor "objectively unreasonable." In determining whether the marks were legally protectable, the Court applied the traditional hierarchy of mark classifications: (1) generic marks; (2) descriptive marks; (3) suggestive marks; and (4) arbitrary or fanciful marks. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 221 (3d Cir. 2000). "In order to qualify for Lanham Act protection, a mark must either be suggestive, arbitrary, or fanciful, or

---

[2] The same is true of Defendants' pending matters before the PTO, in which they assert that their marks are legally protectable under the Lanham Act and enjoy priority over Plaintiffs' marks.

[3] Defendants ask the court to cabin the amount of fees to when Day Pitney began on the case, in December of 2015. However, they cite no authority in which courts have limited fees in this way, and this Court, examining the "totality of the circumstances" surrounding the litigation, is not bound to do so. Moreover, as explained *infra*, the fact that Plaintiffs made weak arguments after Defendants' new counsel took over does not make Plaintiffs' initial claims frivolous or objectively unreasonable.

must be descriptive with a demonstration of secondary meaning.*" Id.* at 222. Ultimately, I rejected Plaintiffs' arguments that certain of the marks were arbitrary as advertising service marks by applying the three-part test outlined by the Federal Circuit in *In re Advertising & Marketing Development, Inc.,* 821 F.2d 614 (Fed. Cir.1987)). Then, after noting that the "the descriptive-suggestive borderline is hardly a clear one," found that one of Plaintiffs' marks—PEER-SPECTIVES—was suggestive and potentially protectable. Summ. J. Op. at 20 (citing *Dranoff v. Perlstein Assoc. v. Sklar*, 967 F.2 852, 857-58 (3d Cir. 1992)). Although I found that the remaining 15 marks were descriptive, I only did so after applying the so-called "imagination test," which asks "if it requires imagination, thought or perception to reach a conclusion as to the nature of goods." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 297 (3d Cir.1986) (quoting *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479 (S.D.N.Y.1968)). While I found that it did not require much imagination to reach a conclusion about the nature of the goods or services in this case, the inquiry is necessarily fact-intensive and, to an extent, subjective. As such, "[e]ach of [Plaintiffs'] trademark claims…required the application of a fact-intensive, multifactor analysis, making it difficult for [Plaintiffs] to predict the likelihood of success on the merits." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc*., No. 14-3419, 2018 WL 317850, at *2 (S.D.N.Y. Jan. 8, 2018), *aff'd sub nom*., No. 18-293, 2019 WL 1223089 (2d Cir. Mar. 15, 2019) (finding trademark infringement case was not "exceptional" under the Lanham act).

Plaintiffs' argument that their marks possessed secondary meaning had some merit such that it is inappropriate to declare this case exceptional. In order for a descriptive mark to be protectable, it must possess "secondary meaning," *i.e.*, acquired distinctiveness. *A.J. Canfield*

*Co.*, 808 F.2d at 297. The Third Circuit, in *Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000), established eleven factors with which to determine the existence of secondary meaning; that is, to show whether there is an association in consumers' minds between the goods/services covered by the mark and the source of the goods/services.[4] Plaintiffs thoroughly briefed the issue, offering arguments and evidence as to why the marks had attained secondary meaning under each of the eleven factors.

I ultimately never reached the *Commerce* factors, however, because Plaintiffs had failed to meet a threshold requirement of the secondary meaning analysis, proving that the "mark possessed secondary meaning *at the time [Defendants] commenced [their] use of the mark.*" *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F. 2d 1225, 1232 (3d Cir. 1978) (emphasis added). Indeed, the parties engaged in an extended discovery dispute about the first-use date, and, recognizing that it was Plaintiffs' burden to prove secondary meaning, the Special Master and the Magistrate Judge ordered Plaintiffs to produce a corporate representative who could testify on exactly this issue. The corporate representative, however, failed to offer testimony on whether the marks had acquired secondary meaning, reasoning that the evidence was in Defendants' control and not reasonably available to Plaintiffs. However, while Plaintiff failed to meet their burden of proving secondary meaning, this was "a failure of proof," that resulted from evidence that was not available to Plaintiffs through much of the litigation. *Parks, LLC v. Tyson Foods, Inc.*, No. 15-00946, 2017 WL 3534993, at *4 (E.D. Pa. Aug. 17, 2017) (finding

---

[4] The *Commerce* factors are: (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion. *Commerce Nat'l*, 214 F.3d at 438.

trademark infringement suit was not exceptional when court dismissed plaintiff's claims due to a "failure of proof"). While Plaintiffs could not ultimately prove the date on which their marks had attained secondary meaning, there is no dispute that they brought their claims based on marks that "bore close similarity" to their own marks and that the respective products were "closely related." *Id.* at *5 (finding that plaintiff's claims were not frivolous, in part, because, there was "little question that Tyson's 'Park's Finest' name bore a close similarity to the 'Parks' name, and that the two products, Tyson's hot dogs and Parks's sausages, are closely related"). Thus, when Plaintiff brought the suit, "[m]any of the pieces then seemed to be in place for a potentially meritorious [trademark infringement] suit." *Id.*

This is not to say Plaintiffs did not make certain weak arguments in their summary judgment briefing. For instance, in their cross-motion for summary judgment, Plaintiffs sought cancellation of Defendants' marks as part of their declaratory judgment claim, even though district courts only have jurisdiction to cancel marks after the party has prevailed on its underlying claims. Moreover, the position that Plaintiffs took in their brief—that Defendants' marks should be cancelled because Defendants had not used certain of the marks—seemingly undermined the basis for their trademark infringement claims, which require that the infringing party have used the offending marks. Because these positions are seemingly contradictory, it is inexplicable why Plaintiffs decided to make them. However, *Octane Fitness* does not stand for the proposition that a case is exceptional merely because a losing party advanced weak or contradictory *arguments* in support of its claims. Rather, courts interpreting these cases have generally looked to the motivation behind the claims at the outset of the litigation, and whether the claims, when filed, are frivolous or objectively unreasonable. As one court has put it, "[m]ere

12

assertions that a party's arguments were without merit are generally unavailing; rather, courts are more likely to award fees where a party knew or willfully ignored evidence of his claims' meritlessness, where such meritlessness could have been discovered by basic pre-trial investigation, or where such meritlessness is made clear to the court early in the litigation." *Louis Vuitton Malletier*, 2018 WL 317850, at *3 (quoting *Small v. Implant Direct Mfg. LLC,* No. 06-683, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014)). Here, despite Plaintiffs' unpersuasive arguments at the summary judgment stage, Defendants have not shown that Plaintiffs brought claims that they should have known were meritless. The absence of such a showing, while not the *sine qua non* of the analysis, substantially undermines Defendants' argument that the merits of Plaintiffs' positions were *exceptionally* weak under 15 U.S.C. § 1117(a).

Indeed, the only in-Circuit case interpreting *Octane* and *Fair Wind* on which Defendants rely, *Renna v. City of Union, N.J*, illustrates exactly this point. No. 11-3328, 2015 WL 93800 (D.N.J. Jan. 7, 2015), *report and recommendation adopted*, 2015 WL 1815498 (D.N.J. Apr. 21, 2015). In *Renna*, the plaintiff prevailed at the summary judgment stage on her trademark infringement claims and subsequently moved for fees. The court awarded fees, because, unlike here, there was a finding that the defendant knew that its defenses were factually and legally groundless. *Id.* at *8. In fact, prior to bringing suit, the defendant had sent plaintiff two cease-and-desist letters asserting that its marks had earned trademark protection when, in fact, its application had already been denied by the PTO. *Id.* Thus, the case was exceptional because it was entirely "reasonable to expect Defendant to have been aware" that plaintiff's marks were not violating a registered trademark, at the latest "by the time Plaintiff commenced this litigation."

*Id.* In reaching this decision, the *Renna* court noted that, "Courts applying the more flexible *Octane Fitness* standard have awarded fees where the losing party has either pursued baseless claims, or engaged in inequitable conduct." *Id.* (citing *Lumen View Tech., LLC v. Findthebest.com, Inc.*, No. 13-3599, 2014 WL 2440867, at *6–7 (S.D.N.Y. May 30, 2014) (granting fees where plaintiff's case was "frivolous and objectively unreasonable" because plaintiff conducted no pre-litigation investigation despite receiving notice that defendant's product simply could not infringe plaintiff's patent); *Yufa v. TSI Inc.*, No. 091315, 2014 WL 4071902, at *5 (N.D.Cal. Aug.14, 2014) (awarding fees where plaintiff's visit to defendant's headquarters indicated the weaknesses of plaintiff's claims, and that plaintiff "should have known that his lawsuit was objectively baseless"); *Intellect Wireless Inc. v. Sharp Corp.*, No. 10–6763, 2014 WL 2443871, at *6–8 (N.D.Ill. May 30, 2014) (concluding case was "exceptional" where plaintiff knowingly made false statements to the USPTO to obtain a patent, withheld relevant discovery, and advanced meritless infringement claims)). For the reasons already explained, this is not such a case. Thus, without precedent supporting Defendants' arguments, the Court, in its discretion, declines to find so vast a discrepancy in the parties' litigating positions as to merit designating the case as exceptional.[5]

---

[5] Nor is this, as Defendants contend, a case in which deterrence strongly weighs in favor of finding exceptionality. Courts have granted fees when doing so would deter the losing party from acting as a "trademark bully" and filing a bevy of frivolous trademark infringement suits at the faintest hint of infringement. *Louis Vuitton Malletier*, 2018 WL 317850, at *3. This is a family dispute that, though heated, is limited to the parties of this case. In such situations, "a judgment on the merits at summary judgment itself precludes future litigation on the same set of facts." *Scholz v. Goudreau*, 901 F.3d 37, 50 (1st Cir. 2018) (citing *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S.Ct. 1293 (2015)) (finding that deterrence rationale did support a finding of exceptionality in trademark infringement suit because court's summary judgment opinion resolved the dispute between the parties).

### B. Manner in Which Plaintiffs Litigated Case

Defendants also contend that fees are warranted because of the manner in which Plaintiffs litigated the case. Under *Fair Wind*, a case may be exceptional when the losing party has litigated the case in an "unreasonable manner." *Fair Wind,* 764 F.3d at 315. However, under the totality of the circumstances approach, the conduct of both parties is relevant to the analysis. *Parks, LLC*, 2017 WL 3534993, at *3 (citing *Gaymar Indus. v. Cincinnati Sub-Zero Prods.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015)) ("This being a totality-of-the-circumstances inquiry, a word about [movant's] own discovery conduct is appropriate.").

Defendants point to various allegedly unreasonable actions that Plaintiffs took over the course of the litigation, most of which occurred during discovery. For instance, they contend that Plaintiffs avoided providing substantive responses to interrogatories by giving boilerplate responses and failing to identify facts to support the contention of secondary meaning; failed to prepare their Rule 30(b)(6) witness on the trademark protectability issues and forced Defendants to file a motion to compel; produced large amounts of ESI in a format that was both technologically and logistically unusable; and served harassing and unnecessary subpoenas. Plaintiffs, for their part, contend that Defendants did not behave blamelessly either: they argue that Day Pitney rejected the ESI protocols and search terms that had been agreed to by counsel over the course of two years, and admitted, in the fall of 2017, that they had not yet produced any of the 45,000 emails disclosed in the searches, and the Special Master ordered them to begin production. Moreover, the Magistrate Judge recently issued an opinion on Plaintiffs' motion for sanctions against Defendants for violations of the Discovery Confidentiality Order, finding that "[w]hile the violations at issue were inadvertent, the Court does not find that they were

substantially justified under Rule 37(b)(2)(C)," and, therefore, awarding Plaintiffs reasonable costs and fees. ECF No. 316 at 24. Thus, "the fact that [Defendants were] on the losing side of some of those discovery disputes cuts against its argument that [Plaintiffs were] unreasonable." *Parks, LLC*, 2017 WL 3534993, at *3 (citing *Parallel Networks Licensing, LLC v. Int'l Bus. Machs. Corp.*, No. 13-2072, 2017 WL 3232422, at *2 (D. Del. July 31, 2017)).

Indeed, this is not a case like those where courts have found exceptionality based on unreasonable litigation conduct, *See Cosmetic Warriors Ltd. v. Nailush LLC,* No. 17-1475, 2017 WL 5157390, at *7 (D.N.J. Nov. 6, 2017) (finding defendant's conduct "unreasonable" when it continued to use mark after multiple cease-and-desist letters, a PTO decision finding its mark "confusingly similar," and failed to litigate the case, necessitating a default judgment); *G6 Hospitality Franchising LLC v. Hi Hotel Group, LLC*, 171 F.Supp.3d 340 (M.D. Pa. 2016) *vacated and remanded on other grounds*, 670 Fed.Appx. 759 (3d Cir. 2016) (finding case exceptional due to litigation conduct where court found defendants' conduct resulted in protracted litigation, including multiple continuances resulting from changes in defense counsel "at the eleventh hour after opposing counsel and the Court made substantial investments in preparing for trial.").[6]

In the end, this was a contentious family business dispute in which both parties have litigated the cases aggressively. In keeping with this history, Defendants, in their brief supporting

---

[6] Also cutting against Defendants' argument is that, shortly after becoming counsel, Day Pitney withdrew a fully briefed motion by prior counsel to file a Second Amended Counterclaim, and entirely changed Defendants' litigation strategy. While the Court does not fault Day Pitney for identifying pertinent issues and "streamlining" the litigation, in doing so, they essentially admitted that Defendants had to substantially change their litigating position.

this motion, accused Plaintiffs of filing the case due to "the desire of Plaintiffs and their Chairman, John ("Jack") Hennessy, II, to harass his brother, Michael J. Hennessy ("Michael"), and disrupt the operations of Michael's competing business," ECF No. 312-1 at 1, a charge that Plaintiffs characterize as a "scurrilous and meaningless personal attack[ ]." ECF No. 315 at 8. Surely, neither party is blameless in their conduct during this case, and, ultimately, Defendants' "bombastic accusations cut against its argument that fee shifting is warranted because of the way its opponent litigated the case." *Parks, LLC*, 2017 WL 3534993, at *4.

Thus, this is not a case where Plaintiffs' conduct merits declaring the case exceptional.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for an order declaring this case exceptional under 15 U.S.C. § 1117(a) such that reasonable attorneys' fees and costs be awarded is **DENIED**.


Dated: March 28, 2019               /s/ Freda L. Wolfson
                                    Hon. Freda L. Wolfson
                                    United States District Judge